IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BRADLEY LOUIS STANFIELD,   )<br>    Plaintiff,   ) | Case No. 7:20-cv-00363 |
| v.   ) | |
| HAROLD W. CLARKE, et al.,   )<br>    Defendants.   ) | By: Michael F. Urbanski<br>Chief United States District Judge |

**MEMORANDUM OPINION**

Plaintiff Bradley Luis Stanfield, a federal inmate proceeding pro se, was previously incarcerated at Coffeewood Correctional Center, a state correctional facility in Culpeper County. He commenced this action by filing a complaint under 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was incarcerated at that facility. In particular, Stanfield claims that Correctional Officer Jonathan Kaufman used excessive force against him in violation of the Eighth Amendment. He also claims that Harold Clarke, I. Gilmore, and Major Hibbs are subject to supervisory liability for the use of excessive force and that he was subsequently transferred to another prison, where he contracted COVID-19. The case is presently before the court on the defendants' motions to dismiss. ECF Nos. 27 and 46. For the reasons set forth below, the motion to dismiss filed by Clarke, Gilmore, and Hibbs is **GRANTED**, and the motion to dismiss filed by Kaufman, who is proceeding pro se, is **DENIED**.

I.   Factual Background

Stanfield's complaint sets forth the following allegations relevant to the motions to dismiss filed by the defendants. For purposes of ruling on the motions, the court "accepts all

well-pled facts as true and construes these facts in the light most favorable to the plaintiff." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

Stanfield's claims are primarily based on an incident that purportedly occurred while he was working in the medical department at Coffeewood Correctional Center ("Coffeewood") on the morning of October 17, 2019. Stanfield alleges that Kaufman "used his forearm with extreme force striking [Stanfield] in the chest and knock[ing] him off the bench straight onto his back." Compl., ECF No. 1, at 5. He further alleges that Kaufman's actions caused "excruciating back pain and medical injuries" for which he obtained treatment and that Kaufman "was disciplined and allegedly terminated due to his malicious behavior towards [Stanfield]." Id. at 4–5. Stanfield also alleges that, prior to this incident, "numerous complaints" had been filed against Kaufman, including "[r]acial and violent complaints." Id. at 3–4.

Following the incident, Stanfield experienced "reprisal from different staff member[s]." Id. at 6. When he reported the staff members' conduct to the institutional investigator, the Virginia Department of Corrections ("VDOC") immediately transferred him to Dillwyn Correctional Center ("Dillwyn"), where he contracted COVID-19. Id. Stanfield alleges that Coffeewood "had zero confirmed cases of the virus" at the time of the transfer, whereas Dillwyn "had the most COVID-19 cases" within the VDOC. Id.

## II. Procedural History

While Stanfield was still incarcerated at Dillwyn, he filed this action against Harold Clark, the Director of the VDOC; I. Gilmore, the Warden of Coffeewood at the time of the alleged use of excessive force; Major Hibbs, the Chief of Security at Coffeewood; and

Kaufman. Stanfield claims that his Eighth Amendment rights were violated as a result of the use of excessive force by Kaufman and the subsequent transfer to Dillwyn.

Clarke, Gilmore, and Hibbs have moved to dismiss the complaint against them under Federal Rule of Civil Procedure 12(b)(6). Kaufman has also filed a pro se motion to dismiss, which the court construes as being brought under the same rule. Both motions are ripe for consideration.

### III. Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). Such motion "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Id. (internal quotation marks and citation omitted). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While a complaint does not need "detailed factual allegations," merely offering "labels and conclusions," "naked assertion[s] devoid of further factual enhancement," or "a formulaic recitation of the elements of a cause of action will not do." Id. (alteration in original) (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 555, 557).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the

'documents attached or incorporated into the complaint.'" Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 606 (4th Cir. 2015) (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011)). The court may only consider a document attached to a motion to dismiss if the document is "integral to the complaint and there is no dispute about the document's authenticity." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). "Consideration of extrinsic documents by a court during the pleading stage of litigation improperly converts the motion to dismiss into a motion for summary judgment." Zak, 780 F.3d at 606.

## IV. Discussion

Stanfield has filed suit against the defendants under 42 U.S.C. § 1983. Section 1983 imposes liability on any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. To state a claim under § 1983, "a plaintiff 'must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" Loftus v. Bobzien, 848 F.3d 278, 284–85 (4th Cir. 2017) (quoting Crosby v. City of Gastonia, 635 F.3d 634, 639 (4th Cir. 2011)). The plaintiff must also show "that the official charged acted personally in the deprivation of the plaintiff['s] rights." Wilcox v. Brown, 877 F.3d 161, 170 (4th Cir. 2017); see also Iqbal, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

4

### A. Jonathan Kaufman

The court will begin by addressing Stanfield's claim of excessive force against Kaufman. Excessive force claims brought by convicted inmates are governed by the Eighth Amendment's prohibition against cruel and unusual punishment. Kingsley v. Hendrickson, 576 U.S. 389, 400 (4th Cir. 2015). Such claims involve both an objective and a subjective component. Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019). "The objective component asks whether the force applied was sufficiently serious to establish a cause of action." Id. "This is not a high bar, requiring only something more than 'de minimis' force." Id.; see also Wilkins v. Gaddy, 559 U.S. 34, 39 (2010) (explaining that "nontrivial" force satisfies the objective element of an Eighth Amendment excessive force claim). The subjective component "asks whether [the defendant] 'acted with a sufficiently culpable state of mind.'" Brooks, 924 F.3d at 112 (quoting Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 2019)). In particular, the plaintiff must establish that the defendant acted with "wantonness in the infliction of pain," which "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Id. When analyzing the subjective component, courts consider four nonexclusive factors:

> (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response."

Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008) (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).

Construing the facts in the light most favorable to Stanfield, the court concludes that the complaint states a plausible claim of excessive force against Kaufman. Stanfield adequately alleges that Kaufman applied more than de minimis or nontrivial force by striking Stanfield in the chest and knocking him onto his back. Likewise, the factual allegations allow the court to reasonably infer that Kaufman acted maliciously or wantonly for the purpose of causing harm. According to the complaint, there was no need for the application of force against Stanfield. Consequently, Stanfield plausibly alleges that the use of force, which allegedly resulted in excruciating back pain and other injuries, was excessive.

In moving to dismiss the claim against him, Kaufman asks the court to consider exhibits that he contends establish that he was merely "horseplay[ing]" with Stanfield and that Stanfield did not actually suffer any injuries. Def.'s Mot. Dismiss, ECF No. 46, at 1. However, the exhibits on which he relies are not attached to the complaint or incorporated by reference therein. Nor are they integral to the complaint. See Goines, 822 F.3d at 166 (noting that "a document is 'integral to the complaint' 'where the complaint relies heavily upon its terms and effect'") (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)). Thus, the court cannot consider the exhibits in ruling on Kaufman's motion to dismiss.[1] Id. Because Kaufman's motion depends entirely on the exhibits, which the court declines to consider at this stage of the litigation, the motion must be denied.[2]

---

[1] The court declines to convert the motion to a motion for summary judgment under Federal Rule of Civil Procedure 12(d). See Covey v. Assessor of Ohio Cnty., 777 F.3d 186, 193 n.7 (4th Cir. 2015) (noting that Rule 12(d) "provide[s] an option for a court to either (A) consider 'matters outside the pleadings' and treat a motion to dismiss 'as one for summary judgment' or (b) exclude the matters") (quoting Fed. R. Civ. P. 12(d)).

[2] Kaufman is advised that he may renew his arguments in a motion for summary judgment under Federal Rule of Civil Procedure 56.

### B.     Clarke, Gilmore, and Hibbs

#### 1.     Excessive force

Stanfield claims that Clarke, Gilmore, and Hibbs are subject to supervisory liability for the use of excessive force. See Pl.'s Mem. Opp'n M. Dismiss, ECF No. 49, at 3–4. (citing the test for supervisory liability set forth in Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994)). In order to state a claim of supervisory liability under § 1983, a plaintiff must allege facts sufficient to show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices[;] and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw, 13 F.3d at 799 (internal quotation marks and citations omitted); see also Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984) (discussing the "heavy burden" that a plaintiff assumes when asserting a claim of supervisory liability).

To satisfy the first element, a plaintiff must show that "the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." Shaw, 13 F.3d at 799; see also Slakan, 737 F.2d at 373 (noting that a plaintiff "cannot satisfy his burden of proof by pointing to a single incident or isolated incidents"). With respect to the second element, a plaintiff "may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Shaw, 13 F.3d at 799 (quoting Slakan,

7

737 F.2d at 373). Finally, as to the third element, "[c]ausation is established when the plaintiff demonstrates an 'affirmative causal link' between the supervisor's inaction and the harm suffered by the plaintiff." Id. (quoting Slakan, 737 F.2d at 376).

Stanfield's complaint does not contain sufficient facts to support each of these elements. Among other deficiencies, he does not plausibly allege that Clarke, Gilmore, or Hibbs had actual or constructive knowledge that Kaufman was engaging in conduct that posed a pervasive risk of constitutional injury. Although Stanfield asserts that Kaufman had been the subject of "numerous complaints," Compl. at 4, he does not provide enough facts from which the court can reasonably infer that Kaufman had previously used excessive force "on several different occasions" or that he had a "widespread" history of physically assaulting inmates. Shaw, 13 F.3d at 799. Thus, the court concludes that Stansfield's complaint fails to state a cognizable claim of supervisory liability under § 1983. See, e.g., Thompson v. Commonwealth, 878 F.3d 89, 111 (4th Cir. 2017) (affirming the dismissal of a supervisory liability claim on summary judgment where the plaintiff "only ma[de] conclusory allegations without any specific facts that [the supervisory] defendants had knowledge that retaliation was taking place and that they acquiesced in the retaliatory acts"); Thompson v. Dorsey, No. 1:10-cv-01364, 2011 WL 261074, at *3-5 (D. Md. June 30, 2011) (dismissing a supervisory liability claim where the complaint contained only "conclusory language" regarding a history of misconduct by subordinate officers).

In response to the defendants' motion, Stanfield suggests that he may be able to provide additional factual information that would state a plausible claim of supervisory liability against Clarke, Gilmore, and Hibbs. Based on Stanfield's assertions and in light of his status

8

as a pro se litigant, the court will dismiss the claim without prejudice and give him an opportunity to amend the complaint to correct the noted deficiencies, if he chooses to do so.

### 2. Transfer

Stanfield also claims that his Eighth Amendment rights were violated as a result of being transferred to a facility that had positive cases of COVID-19. To the extent Stanfield seeks to hold Clarke, Gilmore, and Hibbs responsible for the transfer, the supervisory defendants have moved to dismiss any claim against them for lack of personal involvement. See Iqbal, 556 U.S. at 676 (emphasizing that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution). The defendants correctly note that Stanfield does not allege that they authorized or requested the transfer, or that they were otherwise involved in the decision to move him to another facility. Additionally, Stanfield does not address this particular claim in his response to the defendants' motion to dismiss and therefore appears to concede that the complaint fails to state a claim against these defendants arising from the transfer. Accordingly, this claim will be dismissed with prejudice as to Clarke, Gilmore, and Hibbs.

## V. Conclusion

For the reasons set forth herein, the motion to dismiss filed by Kaufman, ECF No. 46, is **DENIED**, and the motion to dismiss filed by Clarke, Gilmore, and Hibbs, ECF No. 27, is **GRANTED**. An appropriate order will be entered.

Entered: April 22, 2022

Michael F. Urbanski
Chief U.S. District Judge
2022.04.22 16:54:53 -04'00'

Michael F. Urbanski
Chief United States District Judge